**Florence Scianna, Plaintiff-Appellant, and Paula J. Luck and Betty Ann Scianna, Intervenors-Appellants, v. Jennie Scianna, Defendant-Appellee.**

Gen. No. 50,370.

First District, Second Division.

March 22, 1966.

Frank Licastro, Sr., of Chicago, for plaintiff-appellant. McKeown, Trussell, Brooks & Boland, of Chicago (William V. Brooks, of counsel), for intervenors-appellants.

James C. Kellogg, of Chicago, for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This appeal is taken from an order of summary judgment entered January 13, 1965 in the Circuit Court of Cook County. The appellants urge as error that the affidavit of Jennie Scianna in support of her motion for summary judgment should have been stricken on the basis that she was barred from testifying in this matter by sec 2 of the Evidence Act. (Ill Rev Stats 1963, c 51, § 2.) It is also urged that the form of the motion for summary judgment filed by Jennie Scianna does not conform to Supreme Court rule 15 (Ill Rev Stats 1963, c 110, § 101.15). The third point raised on this appeal is that there were triable issues of fact raised by the pleadings and affidavits, and that summary judgment was, therefore, improper.

Thomas Scianna died on September 9, 1964. At that time he was lawfully wed to Florence Scianna, one of the

appellants in this matter. Paula J. Luck and Betty Ann Scianna are the children of Thomas Scianna and Sally Scianna, the first wife of Thomas, from whom he was divorced October 25, 1960. The appellee, Jennie Scianna, is a sister of the deceased. At the time of his death, Thomas Scianna held in joint tenancy with his sister, Jennie, real estate in Palatine, Illinois and savings accounts in three banks, First National Bank of Des Plaines, The Pioneer Trust and Savings Bank and The Northwest Federal Savings and Loan Association, "and other sums in divers banks and savings and loan institutions known and secreted by (appellee), including a safe deposit box rented by decedent."

The real estate in Palatine, Illinois had been owned and used as a residence by Thomas and Sally Scianna until their divorce. The property was then given to Sally Scianna as a part of the property settlement. According to the Statement of Facts in the appellants' brief, Sally Scianna later defaulted in the provisions of the settlement order and on January 24, 1961, Thomas Scianna negotiated for the repurchase of the real estate from his former wife. This was accomplished on February 10, 1961 when Sally Scianna reconveyed the property to Thomas for $5,000 and the cancellation of an amount due to Thomas under the property settlement.

On August 31, 1961, about nine months prior to his marriage to Florence Scianna, Thomas Scianna conveyed the property in Palatine, Illinois to one Agnes Brownlie, and she then reconveyed this property to Thomas Scianna and Jennie Scianna as joint tenants with the right of survivorship. It is alleged that no consideration passed in either of these transfers. It is further alleged that Jennie Scianna has never resided upon the premises.

The amended complaint in chancery filed by Florence Scianna individually and as executrix of the estate of Thomas Scianna alleges that the money in the savings

accounts was money saved and accumulated by Thomas Scianna from his wages, investments and the like, and that after his divorce from his first wife and before he remarried, Thomas Scianna put these funds in joint accounts with his sister Jennie. It is alleged that Jennie made no deposits of her own money to these accounts and that all the money contained therein was the money of the deceased.

The complaint of Florence Scianna asks that Thomas Scianna be declared to have had the sole interest in the real estate and in the bank accounts or in the alternative that a resulting trust be declared in this property with Jennie Scianna holding the land and money for the benefit of the estate of Thomas Scianna.

The answer to the complaint filed by Jennie Scianna states that she was a joint tenant in the real estate and states that the love and affection between her and her brother was the consideration for the transfer of this real property. She denies that Thomas Scianna left large sums of money in the savings accounts mentioned in the complaint and alleges that if any funds were in the banks mentioned, they were funds earned, accumulated and deposited by her. She denies secreting funds in any other banks, savings and loan institutions or safety deposit boxes. She denies the existence of any fraud in these transactions and states that the deceased was a person of sound mind and fully aware of his familial obligations.

Jennie Scianna also filed a counterclaim alleging that she was the owner of valuable personal belongings with a value of $1,565 which were in the home in Palatine, and which Florence refuses to deliver to her. This property has not been identified. She also claims that one Frank Licastro, attorney for Florence, persuaded her to execute a quitclaim deed of the real estate in question, and asks that the court direct that the deed be surrendered and

cancelled so as to prevent its filing and a subsequent cloud on Jennie's title to the property.

After these pleadings were filed, Paula J. Luck and Betty Ann Scianna were given leave to intervene. Jennie Scianna then filed a motion for summary judgment with an affidavit setting forth her claim and alleging certain facts. This motion was accompanied with a memorandum of authorities.

A counteraffidavit was then filed by Frank Licastro, attorney for Florence Scianna. In this affidavit it is stated that he represented the deceased in his divorce action from Sally Scianna. He then alleges the background facts concerning the reconveyance of the real estate from Sally to Thomas. It is further alleged that "affiant advised and counselled Thomas Scianna with respect to safeguards and protections that might be devised to prevent Sally Scianna from transferring or attaching accounts then in the name of Thomas Scianna; or to prevent any future spouse from laying claim to the property until said Thomas Scianna could decide on the final disposition of his properties. . . ." It is alleged that Thomas Scianna then made Jennie a joint tenant in these bank accounts and that Thomas had confidence that Jennie would follow his wishes with respect to the money contained therein. A similar allegation is made with respect to the real estate.

It is also alleged in this affidavit that Thomas Scianna had expressed to the affiant his desire to have his new wife, Florence, made joint tenant in the bank accounts and in the real estate. Finally, it is alleged that Jennie Scianna stated to affiant on the date of the death of Thomas and on the day following, that she knew the wishes of Thomas and requested affiant to complete the work necessary to carry out his desires.

Betty Ann Scianna, a daughter of the deceased and one of the appellants herein, filed an affidavit stating that on or about September 27, 1964, 18 days following

the death of Thomas, she attended a conference at which were present her sister, Paula J. Luck, and Jennie Scianna. It is alleged, "That during the discussion Jennie Scianna stated that she had not wished to have Thomas Scianna place any of his property in joint title with said Jennie Scianna; and told said Thomas Scianna that 'if you insist on putting my name as a joint tenant of your property, and something happens to you, I will do everything in my power to see that the girls get their rightful share of all your property.' "

It was alleged that at this time Jennie Scianna also stated, "I never considered that I had an interest in the property that your father put in my name, but that I was taking care of the rights of my nieces; and I always felt no outsider, like Florence Scianna, should get any interest against our flesh and blood."

A complaint was then filed by Betty Ann Scianna and Paula J. Luck, intervenors, which does not differ in any material respect from the amended complaint of Florence Scianna. Florence Scianna then moved for summary judgment. This was accompanied by an affidavit of Frank Licastro which is in substance the same as the affidavit he filed earlier.

A motion to dismiss Paula J. Luck and Betty Ann Scianna as intervening parties was filed by Jennie Scianna. This motion stated that the cause of action, if any, lies with the personal representative of the deceased, that the intervenors are heirs of the deceased and could not be original parties plaintiff in this matter and that the rights of the intervening parties are identical with those of Florence Scianna as an heir, and must await the outcome of the suit in which Florence Scianna is plaintiff in her representative capacity.

Further pleadings were filed by Florence Scianna concerning the countercomplaint of Jennie Scianna in which she denied that Jennie Scianna had any valuable belongings in the deceased's home. Another motion was filed by

Florence Scianna asking the court to strike the affidavit of Jennie Scianna because it does not comply with the requirements set forth by Supreme Court rule 15, because Jennie Scianna is not competent to testify to the facts set forth in the affidavit, and because the affidavit sets forth conclusions only and not facts admissible in evidence.

The court then ordered that the motion for summary judgment on behalf of Jennie Scianna be granted. It is from this order that the appeal has been taken.

■ The first point we shall consider is whether the court below should have granted the motion of the appellants to strike the affidavit of Jennie Scianna on the basis that she was incompetent to testify concerning this matter. The relevant portions of sec 2 of the Evidence Act read:

> "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, . . . when any adverse party sues or defends . . . as the executor, administrator, heir, legatee or devisee of any deceased person . . . unless when called as a witness by such adverse party so suing or defending, and also except in the following cases, namely: . . .
>
> "Third—Where, in any such action, suit or proceeding, any such party suing or defending, as aforesaid, or any persons having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending, to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the same conversation or transaction."

Supreme Court rule 15 states that affidavits in support of and in opposition to a motion for summary judgment or decree "shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto."

Appellees argue that since Florence Scianna is suing as administratrix and as heir, and since Paula J. Luck and Betty Ann Scianna are suing as heirs, Jennie Scianna is, therefore, precluded from filing her affidavits. Since she could not testify at a trial, it is argued that under Supreme Court rule 15 she should not be permitted to file an affidavit. The only answer made to this claim by the appellee is from her brief which states, ". . . for us to point out that the affidavit of intervenor-appellant, Betty Scianna attributes remarks to defendant-appellee which would certainly remove restrictions as to her testifying . . . would . . . be an idle display of semantics and become an academic exercise."

It would seem from this that the claim is being made that Jennie Scianna's affidavit is admissible as an answer to that of Betty Ann Scianna under the third exception of sec 2 of the Evidence Act. The difficulty with this line of reasoning is that the affidavit of Jennie Scianna was filed *before* that of Betty Ann Scianna and cannot be said to be an answer to anything related in the latter affidavit. On the other hand, no objection was made to the affidavit of Jennie Scianna until after *all* the affidavits had been filed before the court. It would seem, therefore, that if the affidavit of Jennie Scianna does in fact answer claims as to any conversation or transaction made in the affidavit of Betty Ann Scianna, then it would be unnecessary to order the affidavit of Jennie Scianna to be stricken, for she would then be able to refile it immediately as an answer to Betty Ann Scianna.

We must consider, therefore, whether the affidavit of Jennie Scianna can in any way be considered an answer

to that of Betty Ann Scianna. The latter's affidavit deals with a specific meeting which took place 18 days after the death of Thomas and which sets out two specific statements Jennie is alleged to have made. The affidavit of Jennie, however, deals with such matters as the belief of the affiant concerning the state of mind of the decedent when the transfers in question were made. This is not responsive to the affidavit filed by Betty Ann Scianna nor is it the sort of affidavit as would be permitted by any exception to sec 2 of the Evidence Act. Accordingly, the court below should have granted the motion of the appellants to strike the affidavit.

■ Even without the affidavit of Jennie Scianna, however, there remains from the pleadings a question of fact for determination by the court—whether or not Jennie Scianna was made a joint tenant in the property in question with the understanding that she would distribute it after the death of Thomas according to his wishes. There is evidence from the affidavit of Betty Ann Scianna which is probative of the fact that Jennie Scianna took title to the property knowing that she was only a trustee for the children of the deceased. There is also evidence in the affidavit of the attorney, Frank Licastro, whose standing as an uninterested witness is not contested here, that the deceased did not intend his sister to have the equitable title to the property. It seems to us that either of these affidavits would raise a sufficient question of fact to require a trial on the issues.

The holding that there was a question of fact makes it unnecessary for us to decide whether or not the motion for summary judgment was made in proper form. The counterclaim of Jennie Scianna has apparently been dropped by that party and will not be considered on this appeal. The question of whether the daughters of the deceased are proper parties has not properly been raised in the appellee's brief.

The judgment of the Circuit Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Judgment reversed.

LYONS and BURKE, JJ., concur.