# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Thompson v. Buncik*, 2011 IL App (2d) 100589

---

| | |
|---|---|
| Appellate Court Caption | ROBERT THOMPSON and TINA THOMPSON, Individually and Together, Plaintiffs and Respondents-Appellees, v. JOHN BUNCIK, CHAD "DOE," a Person Whose Last Name is Not Known, TOM HOWLETT, and HOWLETT COMPANIES, INC., d/b/a Tom Howlett Construction, Inc., d/b/a Charter Supply Company, and d/b/a Howlett Homes, Defendants (Mort A. Segall, Petitioner-Appellant). |
| District & No. | Second District<br>Docket No. 2-10-0589 |
| Filed | July 26, 2011 |
| Modified upon denial of rehearing | December 29, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court did not err in awarding petitioner attorney fees at the rate of $175 per hour on a *quantum meruit* basis after petitioner withdrew on plaintiffs' request, and the record did not support petitioner's claim that the parties "stipulated" to an hourly rate of $250, and, furthermore, petitioner presented no foundation for his claim that interest should have been awarded, his appeal was frivolous, his requests for rehearing and a certificate of importance were denied, and fees and costs were awarded to respondents for defense of the appeal. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 05-L-26; the Hon. Fernando L. Engelsma, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Mort A. Segall, of Segall Law Offices, of Rockford, for appellant. |
| | Robert F. May, of Law Offices of Robert D. Lowe, of Rockford, for appellees. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner, Mort A. Segall, appeals the trial court's denial of his motion for modification of the judgment, arguing that the trial court erred when it based its award of attorney fees on an hourly rate of $175 instead of a "stipulated" hourly rate of $250. He further argues that the trial court erred when it failed to include prejudgment interest, computed at 5% per annum, in the judgment amount, pursuant to section 2 of the Interest Act (815 ILCS 205/2 (West 2004)). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    In 2005, respondents, Robert and Tina Thompson, retained attorney Mort A. Segall to represent them in a lawsuit against a construction company. Segall was their attorney of record between July 20, 2005, when the complaint was filed, and April 21, 2006, when the trial court permitted him to withdraw at the Thompsons' request. On August 5, 2005, Segall served the defendants in the underlying lawsuit with an "attorneys lien" for "a reasonable fee on any amounts recovered in the within action pursuant to the Attorneys Lien Act (770 ILCS 5/1)." In their "Petition to Terminate Lien," filed April 20, 2009, the Thompsons asserted that Segall was properly compensated for his services in the case and they denied that they retained Segall at an hourly rate of $250. In their answer to Segall's first amended "Petition to Enforce Attorneys Lien," filed September 15, 2009, the Thompsons stated that no hourly rate was ever agreed upon.

¶ 4    On January 28, 2010, after a bench trial, the trial court found as follows:

"1. That on June 7, 2005, Petitioner, SEGALL, was hired by the respondent Plaintiffs, THOMPSONS, to represent them on a substandard construction claim originally filed in Winnebago County by their former attorney, George Hamilos.

2. That although the evidence is clear that the THOMPSONS retained the Petitioner,

SEGALL, there is no contract of employment or credible evidence establishing terms of employment. More specifically, this Court finds there is no credible evidence supporting the Petitioner's, SEGALL['s], claimed hourly rate of $250.00.

* * *

4. Not being able to find an agreed amount of remuneration, this Court finds it appropriate to use the *quantum meruit* approach and, therefore, finds Petitioner SEGALL is entitled to compensation.

5. The rate of $175.00 per hour is a reasonable hourly rate for Petitioner, SEGALL, considering his experience, the complexity of the litigation, prevailing rate at the time, benefit THOMPSONS received from SEGALL's representation, and what was performed for the THOMPSONS, as well as *** considering the evidence and witness testimony presented."

The trial court further found that Segall had expended 48.75 hours on the Thompsons' behalf. The trial court set a fee rate of $175 per hour as a "reasonable hourly rate" and ordered the Thompsons to pay Segall $6,233.55.[1]

¶ 5 On February 11, 2010, Segall filed a petition under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2008)) for modification of the judgment, asking for fees at " 'a reasonable hourly rate' of $250.00" plus costs; additionally, Segall petitioned for prejudgment interest in the amount of $2,437.52 pursuant to statute (815 ILCS 205/2 (West 2008)).[2] The trial court denied Segall's petition on May 13, 2010. Segall filed this timely appeal.

¶ 6 II. ANALYSIS

¶ 7 In this case, the entire record consists of a one-volume common-law record containing certain of the parties' pleadings and the trial court's findings and orders. Citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984), this court has stated that the burden is on the appellant to present a sufficiently complete record of the trial proceedings to support a claim of error on appeal. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 176 (2004). In the absence of a report of proceedings, Illinois Supreme Court Rule 323(c) (eff. Dec. 13, 2005) authorizes a bystander's report, and Illinois Supreme Court Rule 323(d) (eff. Dec. 13, 2005) authorizes an agreed statement of facts. Neither has been provided. See *Dargis*, 354 Ill. App. 3d at 176. Therefore, we will presume that the trial court's decisions had a sufficient factual basis and were in conformity with the law, and, furthermore, any doubts that arise from the incompleteness of the record will be resolved against Segall as appellant. See *Dargis*, 354

---

[1]The judgment amount of $6,233.55 reflects 48.75 hours expended at the $175 hourly rate, plus costs of $352.30, less credit of $2,650 for payments previously made by the Thompsons to Segall.

[2]This amount was determined by applying a rate of 5% interest per annum to all monies due on Segall's claim between December 1, 2005, the date set by the trial court upon which Segall ceased representation of the Thompsons, and the entry of the judgment on January 28, 2010.

Ill. App. 3d at 176.

¶ 8        Under Illinois law, a client may discharge his attorney at any time, with or without cause. *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693 (1999). When a client terminates an attorney working under a contingent-fee contract, the contract ceases to exist and the contingency term is no longer operative. *In re Estate of Callahan*, 144 Ill. 2d 32, 40 (1991). A discharged attorney is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge; in other words, the trial court is literally to award the attorney "as much as he deserves." (Internal quotation marks omitted.) *Wegner*, 305 Ill. App. 3d at 693. As stated in *Wegner*, "[t]he trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case." *Wegner*, 305 Ill. App. 3d at 693. We hold that the trial court did not abuse its discretion when it found that $175 was a reasonable hourly rate.

¶ 9        The first issue pertains to the amount of attorney fees owed to Segall by the Thompsons. Segall petitioned for attorney fees related to his services for the Thompsons while he was their attorney of record. The trial court determined that the Thompsons owed Segall $6,233.55. Segall argues that this amount is erroneous and that this court should find that a "reasonable hourly rate" is $250. Based on that rate, Segall asserts that the proper award is $12,187.50 for 48.75 hours expended, plus $352.30 in costs, less $2,650 credit for payment. Segall asks this court to modify the judgment amount accordingly, reflecting a total of $9,889.80 for fees and costs.

¶ 10       The burden of proof is on the attorney to establish the value of his services. *McHugh v. Olsen*, 189 Ill. App. 3d 508, 514 (1989). To properly determine the reasonable value of an attorney's services, courts should consider the following factors:

"the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client." *Mireles v. Indiana Harbor Belt R.R. Corp.*, 154 Ill. App. 3d 547, 551 (1987).

¶ 11       Citing *People v. Woods*, 214 Ill. 2d 455 (2005), and *People v. Muhammad*, 398 Ill. App. 3d 1013 (2010), Segall insists that the Thompsons forfeited any issue as to the impropriety of his fee request because they stipulated to the admission of evidence supporting it. However, in *Woods* and *Muhammad* the stipulation was to a fact in issue or a foundational requirement for evidence, such as chain of custody. In this case, the stipulation appears to be that an unavailable attorney witness would testify that a fee of $250 per hour would have been reasonable.

¶ 12       The trial court has the discretion to determine the validity and reasonableness of a stipulation and will not enforce a stipulation if it is unreasonable, the result of fraud, or violative of public policy. *Wright v. County of Du Page*, 316 Ill. App. 3d 28, 40 (2000) (it would have been patently unfair to allow a party to use a stipulation that was reached for the purpose of challenging a license ordinance as evidence in defense of the other party's second amended counterclaim, which dealt with a different issue). A stipulation is "nothing more"

than an acknowledgment of what a witness would testify to if called and the concomitant decision not to challenge the testimony the witness would give. *People v. Phillips*, 217 Ill. 2d 270, 284 (2005).

¶ 13    It is clear from the record that the intent of the parties to the stipulation was that $250 per hour was "a" rate that the trial court could consider as proper in deciding on an appropriate rate, not "the" rate agreed to between the Thompsons and Segall. The stipulation was only to the testimony that an expert witness would have given, not a stipulation to an actual fee amount. The agreement by the parties was to what the attorney would have said if called to testify under oath. Were this stipulation a definitive statement of the hourly fee, there would have been no need for further evidence on this issue. We are presented with an indefinite stipulation that Segall characterizes as the final agreement between the parties as to his hourly fee.

¶ 14    We conclude that the stipulation of the parties was, in fact, as the trial court stated, a statement of what "a" reasonable hourly fee might have been at the time of the litigation. The trial court then must decide on the reasonable amount, taking into consideration the relevant factors, including "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Wegner*, 305 Ill. App. 3d at 693.

¶ 15    It appears that there was further evidence heard by the trial court on this point, but we have no record of any objection to such evidence. As stated above, we will presume that the trial court's decisions had a sufficient factual basis and were in conformity with the law, and we will resolve any doubts that arise from the incompleteness of the record against Segall as appellant. Therefore, we determine that no error was committed.

¶ 16    Secondly, Segall asks this court to impose a 5% per annum interest rate on the judgment amount, pursuant to the Illinois Interest Act (815 ILCS 205/2 (West 2004)), which provides:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; *** [and] on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance ***. In the absence of an agreement between the creditor and debtor governing interest charges, upon 30 days' written notice to the debtor, an assignee or agent of the creditor may charge and collect interest as provided in this Section on behalf of the creditor."

¶ 17    The controversy in this case involved whether the Thompsons owed Segall any amount of money; if so, how much; and lastly, whether interest was due on any amount that was found to be owed. As the Thompsons point out, perfecting a notice of a lien does not guarantee a right of recovery; rather, the notice informs the adverse party of the attorney's claim, thereby preventing that party from making a settlement in disregard of the lien. *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, 392 Ill. App. 3d 1059, 1064 (2009). In order to collect, the rights of the parties must be adjudicated and the lien enforced by a court of competent jurisdiction. *Kovitz Shifrin Nesbit, P.C.*, 392 Ill. App. 3d at 1065.

¶ 18    "The law, however, does not automatically attach interest to debts. It can be recovered

only on the basis of a contract or a statute." *Haas v. Cravatta*, 71 Ill. App. 3d 325, 330 (1979). Segall repeatedly states that he is entitled to the interest amount that he calculated because there was a "*written* attorneys lien" and a "*written settlement statement of account*" (emphases in original). He contends that these documents constitute an "instrument of writing" required by the Interest Act, citing a 1911 case and quoting extensively from it in an apparent effort to elucidate his argument. See *Elgin, Joliet & Eastern Ry. Co. v. Northwestern National Bank of Chicago*, 165 Ill. App. 35, 42 (1911) (breach-of-contract case where a written order accepted by the defendant railway company was determined to be "an instrument in writing for the payment of money" that the court found was subject to interest computed from the date on which the right to the moneys was determined to exist). We fail to see the connection to the facts of this case, where no contract was ever established.

¶ 19    Segall also relies on *Haas*, 71 Ill. App. 3d 325, where a contract for the sale of real property contained neither a due date, a date for delivery, nor a requirement of clear title. Segall ignores that the facts of this case are, again, distinguishable because in this case the trial court found that no contract between the parties existed. An attorney's lien is simply notice to the party that the attorney has a right to encumber money payable to a client "until the attorney's fees have been properly determined and paid." Black's Law Dictionary 941 (8th ed. 2004). The lien itself does not determine the amount, nor does a bill to a client determine that the amount is proper in a case such as this. See *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987) ("to justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client"). The "written settlement statement of account" is simply Segall's bill for his services that is the subject of this lawsuit, not an agreement between the parties by any stretch of the imagination.

¶ 20    As a final matter, we find frivolous Segall's argument that he has a right to interest on the amount awarded under the equitable principle of *quantum meruit*. The record does not reflect *any* agreement between the parties as to an hourly rate. The trial court properly determined that Segall was entitled to reasonable fees for services rendered based on *quantum meruit*. However, Segall did not address the *quantum meruit* finding in his opening brief, nor did he respond in his reply brief to the Thompsons' point that prejudgment interest is not allowed (see *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 492 (1980) (an award founded upon *quantum meruit* merits no statutory interest)). Rather than presenting a cohesive argument, he has obfuscated the issue without addressing the rulings of the court or the law underlying those rulings. Nor does he suggest that the law as it stands should be changed for any credible reason. Under the law and facts of this case, Segall is not entitled to statutory prejudgment interest under section 2 of the Interest Act (815 ILCS 205/2 (West 2004)) and has not made a good-faith argument that the judgment is incorrect or the law should be changed.

¶ 21    Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) provides sanctions for frivolous appeals that are not taken in good faith. In determining whether an appeal is frivolous, we apply an objective standard; the appeal is considered frivolous if it would not have been brought in good faith by a "reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312-13 (1990). A party need not be correct

in his view of the law (*Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154 (1993)), but as detailed above, Segall's arguments proffered to the trial court and on appeal lack merit and are not based on the law as it now stands or on a good-faith request for extension of the law. Moreover, Segall continues to raise assertions on appeal that are factually unfounded. Segall's persistent pursuit in this appeal of hourly fees is baseless and in flagrant disregard of the evidence and the law. His characterization of the stipulation was rejected by the trial court and we are affirming. His pursuit of interest on the amount he claims is due him from the Thompsons ignores the trial court's ruling of *quantum meruit* in his favor. He does not provide us with a record on which to review the issue nor does he cite any authority for his argument that interest should be assessed. His approach has absolutely no foundation in the law.

¶ 22 We can only conclude that "the primary purpose of the appeal *** is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Therefore, we find that this appeal is frivolous. Illinois Supreme Court Rule 375(b) provides:

> "A reviewing court may impose a sanction upon a party or an attorney for a party upon the motion of another party or parties, or on the reviewing court's own initiative where the court deems it appropriate. If the reviewing court initiates the sanction, it shall require the party or attorney, or both, to show cause why such a sanction should not be imposed before imposing the sanction."

As we stated in *First Federal Savings Bank of Proviso Township v. Drovers National Bank of Chicago*, 237 Ill. App. 3d 340, 347 (1992), "[t]his court does not mean to discourage attorneys from zealously representing their clients or from bringing appeals that have even arguable merit."

¶ 23 However, in addition to this appeal, Segall's petition for rehearing and his memorandum in response to our rule to show cause can only be viewed as frivolous. The simple fact ignored by Segall is that the law in this state controls our decision. He cites no cases from this jurisdiction, but he continues to argue that the trial court erred and that he is entitled to relief. Furthermore, the record is incomplete, and, without providing a proper record to review, he has continued to harass the opposing parties and usurped this court's time. Therefore, we deny his petition for rehearing.

¶ 24 Segall alternatively requests a certificate of importance pursuant to Illinois Supreme Court Rule 316 (eff. Dec. 6, 2006). He asserts that the following are "questions of such importance that they should be decided by the Supreme Court": (1) whether his so-called "attorneys [*sic*] lien" is entitled to prejudgement interest; (2) whether a "transcript of the bench trial proceedings is necessary for a *de novo* review of the issues raised in the within appeal which are founded upon unrefuted facts plainly set forth in the common-law record"; and (3) whether Illinois jurisprudence permits prejudgment interest on *quantum meruit* claims for services rendered.

¶ 25 In his request, Segall persists in his argument that his attorney's lien filed pursuant to the Attorneys Lien Act (770 ILCS 5/1 (West 2008)) was perfected and thus he should receive prejudgment interest on the amount claimed. The point of the proceedings below was to litigate this very issue. Unfortunately, when a party loses at the trial level, appeals the

judgment, and loses again, repeating the same argument becomes futile.

¶ 26    Regarding Segall's second contention, we reiterate that a stipulation to a witness's testimony is simply an acknowledgment of what that witness would testify, if called, and the concomitant decision not to challenge the testimony the witness would give; in other words, when parties stipulate to a witness's testimony, "a stipulation is not much different from a decision not to cross-examine." *People v. Phillips*, 217 Ill. 2d 270, 284 (2005). A stipulation such as the one presented in the common-law record, which Segall has repeatedly characterized as "unrefuted," is simply a statement of what the opinion witness would have said in his or her testimony; in this case it was merely an opinion as to what a reasonable hourly fee might be. The stipulation to that witness's testimony does not establish conclusively for this court, or any other court, that Segall is then entitled to that hourly amount. It is not, as Segall seems to believe, a stipulation to the amount itself. It was the province of the trial court to decide the weight to accord this piece of evidence, just as it is with any witness's testimony. See *Best v. Best*, 358 Ill. App. 3d 1046, 1055 (2005) ("[W]e will not substitute our judgment for the trial court's regarding the credibility of the witnesses, *the weight it should have given to the evidence*, or the inferences it should have drawn." (Emphasis added.)).

¶ 27    Regarding Segall's third point, we fail to see how the common-law record provided in this appeal establishes any "unrefuted facts" that support his contentions. The whole point of an appeal is to review the proceedings below. We have not been provided with a transcript of proceedings, a bystander's report, or an agreed statement of facts. The common-law record by itself sheds no light on the hearing, the arguments made by the parties, or the trial court's ruling. Segall has flagrantly ignored the rules governing these matters and we advise him to read Illinois Supreme Court Rules 321 (eff. Feb. 1, 1994) and 323 (eff. Dec. 13, 2005) in their entirety pertaining to the contents of the record on appeal and the report of proceedings.

¶ 28    We deny Segall's request for a certificate of importance pursuant to Illinois Supreme Court Rule 316 (eff. Dec. 6, 2006).

¶ 29    Finally, we requested the Thompsons' counsel to submit a statement setting forth fees for the defense of the appeal. We have received a statement seeking $5,015, and we have received Segall's response. We determine the requested fees to be reasonable and award fees and costs in the amount of $5,015 in favor of the Thompsons and against Segall.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of Boone County; the petition for rehearing is denied; the request for a certificate of importance is denied; and fees and costs in the amount of $5,015 are awarded in favor of the Thompsons.

¶ 32    Affirmed.